# Delaware & Atlantic Telegraph & Telephone Company's License Fees.

*Appeals—Telegraph and telephone companies—License fees—Reasonableness of fees—Nature of the appeal—Act of April* 17, 1905.

The appeal provided by the Act of April 17, 1905, P. L. 183, from a decree determining the reasonableness of license fees imposed by municipalities upon certain public service companies, is not a substitute for the common-law writ of certiorari, but is like an appeal from a decree in an ordinary case in equity, and brings before the

appellate court the entire record made up by the exceptions filed to the conclusions of law and fact adopted by the trial court.

In such a case the findings of fact adopted by the trial judge, when the ascertainment of such facts involves the balancing of conflicting testimony, and the credibility of witnesses, will be regarded by the appellate court as if established by the verdict of a jury. Where, however, such findings are but conclusions or inferences drawn from the testimony that is practically undisputed, it is the duty of the appellate court to examine the evidence and determine for itself whether or not the findings are warranted by it.

*Telegraph and telephone companies—License fees—Reasonableness of fees—Act of April 17, 1905, P. L. 183.*

A borough imposed upon a telegraph and telephone company annual license fees which were fixed at $1.00 per pole, $2.50 per mile of wire or cable, and $30.00 per mile of conduit. The court below in proceedings under the Act of April 17, 1905, P. L. 183, found as a fact that the rates were reasonable, and entered a decree accordingly. The appellate court on examination of the testimony found that the fees paid by the company in question and other public service companies aggregated a sum which was about three times the amount paid to the borough's single policeman during the year for inspection duties. It also appeared that after a conduit was laid and the ground had settled, that the inspection of the conduit was little more than perfunctory. It also appeared that very little time was needed in making an effective inspection of the pole line, and that for several years after a new construction there was but little to apprehend from the natural decay of the material. It also was shown that the different companies made · frequent inspections of their own. *Held,* that the borough should be authorized to charge the company $10.00 per mile for each mile of conduit, $1.50 per mile for each mile of wire, and fifty cents for each pole.

A municipality may not under the guise of license fees, levy and collect revenue to be expended in the discharge of municipal obligations.

Argued Nov. 22, 1907.   Appeal, No. 189, Oct. T., 1907, by The Delaware & Atlantic Telegraph & Telephone Company, from decree of C. P. Delaware Co., March T., 1906, No. 172, on petition.   Before RICE P. J., PORTER, HENDERSON, MORRISON, ORLADY and HEAD, JJ.   Decree modified.

Petition of the Delaware &· Atlantic Telegraph & Telephone Company to determine the reasonableness of license

fees imposed by the borough of Sharon Hill.   Before JOHN-
SON, P. J.

The facts are stated in the opinion of the Superior Court.

The court below entered the following decree:

And now, to wit, October 8, 1907, the foregoing exceptions
filed by The Delaware & Atlantic Telegraph & Telephone
Company are hereby dismissed, and it is hereby ordered, ad-
judged and decreed that the rates of license taxes as set forth
in the ordinances of the borough of Sharon Hill, to wit
$1.00 per pole, $2.50 for each mile of wire or cable, and $30.00
for each mile of conduit, are reasonable in order to properly
compensate it for the necessary costs of the services performed
by it and to be performed by it for the inspection and regula-
tion of the poles, wires, conduits or cables of the said The
Delaware & Atlantic Telegraph & Telephone Company, and
the said license taxes shall be the maximum sum which the said
borough of Sharon Hill shall be authorized to charge as license
fees against the said The Delaware & Atlantic Telegraph &
Telephone Company.

*Error assigned* was the decree of the court.

*William I. Schaffer*, for appellant.—This proceeding is assim-
ilated to a proceeding in equity and the effect of the findings
of fact and law by the court is precisely the same as if the pro-
ceeding had been commenced in equity.   The act under which
the proceeding was commenced (Act of April 17, 1905, P. L.
183) directs that it shall be heard and determined "in the man-
ner and way provided by law for the hearing of cases in equity."

The elements which properly enter into a valid license tax
levied by a borough against a telephone company are (1) the
necessary or probable expense incident to the issuing of the
license; (2) the probable expense of such inspection, regula-
tion and police surveillance as the municipal authorities may
lawfully give to the erection and maintenance of the poles and
wires: Schellsburg v. Western Union Telegraph Co., 26 Pa.
Superior Ct. 343.

The only inspection and regulation that the borough pre-

tends to have made is that by its police officer. It has measured the extreme cost of this to it by its ordinance fixing the policeman's salary at $240 per year, which covers the inspection, regulation and surveillance of all the poles, wires, conduits, cables and pipes maintained by the various companies operating within the borough limits. The uncontradicted testimony showed that the borough will collect from these various companies under its ordinance $732.88 per year, which is more than three times the amount which it pretends to spend. This shows that the borough under the guise of license taxes is endeavoring to levy a revenue tax and its endeavor is in the teeth of the opinon in Kittanning Borough v. Western Union Telegraph Co., 26 Pa. Superior Ct. 346.

The taxes levied in this case find no support in the case of Lower Merion Township v. Postal Telegraph Cable Co., 25 Pa. Superior Ct. 306.

Expenditures by a municipality in filling up trenches and in repairing and macadamizing streets are not properly to be taken into account in fixing the amount of license taxes: Pottsville Borough v. Pottsville Gas Co., 33 Pa. Superior Ct. 480.

It ought not to be the rule that the prima facie reasonableness of the license tax levied shall prevail where the taxed company shows the only thing that it can show, i. e., what competent men believe would be an adequate and fair inspection, or that no inspection at all should be made. There is no other answer for a corporation such as the one here seeking relief except to show what a proper inspection was, how it should be made, what it would cost, and that any other inspection would be useless and of no avail.

*Edward P. Bliss*, for appellee.—License fees are not to be held excessive and set aside merely because they are afterwards shown to be somewhat greater than the actual expense of the supervision: Atlantic & Pacific Tel. Co. v. Phila., 190 U. S. 160 (23 Sup. Ct. Repr. 817); Schellsburg v. W. U. Tel. Co., 26 Pa. Superior Ct. 343.

The character, frequency and extent of the inspection are

within the discretion of the municipal authorities, and their discretion will not be interfered with by the court unless it is shown to have been abused: Beach, Public Corporation, sec. 1255; Dillon, Municipal Corporation, sec. 698a (note); Taylor Boro. v. Postal Tel. Cable Co., 16 Pa. Superior Ct. 344; Taylor Boro. v. Postal Tel. Cable Co., 202 Pa. 583; Kittanning Boro. v. Nat. Gas Co., 26 Pa. Superior Ct. 355.

The fees which are imposed by the two ordinances, and which have been declared by the court below to be reasonable, have been upheld by the courts of Pennsylvania in a long line of cases: Allentown v. W. U. Tel. Co., 148 Pa. 117; Chester v. Phila. R. & P. Tel. Co., 148 Pa. 120; Chester v. W. U. Tel. Co., 154 Pa. 464; Phila. v. Am. U. Tel. Co., 167 Pa. 406; Ridley Park v. Citizens' Electric Light, etc., Co., 9 Pa. Superior Ct. 615; Lansdowne v. Electric Light, etc., Co., 9 Pa. Superior Ct. 620; Kittanning Electric Light, etc., Co. v. Kittanning Boro., 11 Pa. Superior Ct. 31; North Braddock Boro. v. Tel. Co., 11 Pa. Superior Ct. 24; New Hope Boro. v. W. U. Tel. Co., 16 Pa. Superior Ct. 306; New Hope Boro. v. Postal Tel. Cable Co., 16 Pa. Superior Ct. 310; Taylor Boro. v. Postal Tel. Cable Co., 16 Pa. Superior Ct. 344; s. c., 202 Pa. 583; W. Conshohocken Boro. v. Electric Light & Power Co., 29 Pa. Superior Ct. 7; Kittanning Boro. v. Gas Co., 26 Pa. Superior Ct. 355.

OPINION BY HEAD, J., October 12, 1908:

The Act of April 17, 1905, P. L. 183, provides that where any dispute shall arise between a municipality and any telegraph, telephone, light or power company as to the amount of a license fee named in any ordinance for the inspection and regulation, under the police power of such municipality, of the poles, wires, conduits or cables of such company, either party may apply by petition to the court of common pleas of the proper county, to determine the said dispute. After providing the process to bring the other party into court, and for pleadings to raise the issues of fact out of which the dispute has arisen, the act directs that it shall be heard and determined "in the way and manner provided by law for the hearing of

cases in equity." The act then provides in section 4, that "either party shall have the right of appeal from the order of the court, to the Supreme or Superior Court, as in other cases."

The present proceeding resulted in a decree, entered by the learned court below, that the annual license fees fixed in the ordinances of the borough of Sharon Hill, to wit: $1.00 per pole, $2.50 per mile of wire or cable, and $30.00 per mile of conduit were properly collectible under the evidence produced, and from that decree this appeal is taken.

Is such appeal but a substitute for the common-law writ of certiorari? If so, our functions are limited to an inspection of the record and a determination whether or not the court had jurisdiction and the proceedings were regular. If the legislature intended the appeal to be of this limited character it would not have been necessary that the right to take it should have been expressly granted. But as the right of appeal has been in terms granted and as the act, in a previous section, had declared that the cause should be determined "in the way and manner provided by law for the hearing of cases in equity," we are disposed to hold that this appeal, like one from the decree in an ordinary case in equity, brings before us the entire record made up by the exceptions filed to the conclusions of law and fact adopted by the learned trial court.

In such a case it has been well settled that the findings of fact adopted by the trial judge, when the ascertainment of such facts involves the balancing of conflicting testimony, the credibility of witnesses, etc., will be regarded by the appellate court as if established by the verdict of a jury. Where, however, such findings are but conclusions or inferences drawn from testimony that is practically undisputed, it becomes our duty to examine the evidence and determine for ourselves whether or not the findings are warranted by it.

The learned court below was not called upon, in this proceeding, to exercise the power possessed by the courts long before the passage of the act now under consideration, viz, to set aside an ordinance because it was unreasonable, oppressive and arbitrary, resulting from an abuse of the powers of the municipality. The object of this proceeding was simply to de-

termine, from the evidence produced, "the amount of annual license fees which should be paid to the said municipal corporation in order to properly compensate it for the necessary cost of the services performed, or to be performed, by it, for the inspection and regulation of the poles, wires, conduits or cables, of the said telegraph" or other "company."

The dispute in the present case arose out of the fact that the borough of Sharon Hill claimed the right to levy, from the petitioner and other corporations of its class operating in the borough, annual license fees based on these rates, viz.: $1.00 for each pole erected, $2.50 for each mile of wire strung thereon, and $30.00 per mile for each mile of conduit laid under its streets. Each of these companies, before beginning the work of construction, was obliged to apply for and obtain a permit, for which a charge of $5.00 was made, and to execute and deliver to the borough a bond with satisfactory security conditioned that any streets or sidewalks affected by such construction should be restored to proper condition and maintained in good order thereafter.

The petitioner itself has constructed in the borough, two and one-fifth miles of conduit, 15.15 miles of wire and ten poles, so that its annual license fee would amount to $113.88. As there was some common use, by the several companies there operating, of portions of property severally owned, the learned court found that all of the annual fees claimed would be, in addition to the petitioner's............................. $113.88

| | | | |
|---|---|---|---|
| Suburban Gas Co. ......4.3 miles pipe........ | | | 129.00 |
| Springfield Water Co. ....4.4 miles pipe......... | | | 132.00 |
| Citizens' Light Co........175  poles.....$175.00 | | | |
| 10 miles wire.. | 25.00 | 200.00 | |
| Western Union Tel. Co...36  poles...... | 36.00 | | |
| 27 miles wire.. | 67.50 | 103.50 | |
| Chester Traction Co. ....42  poles...... | 42.00 | | |
| 5 miles wire.. | 12.50 | 54.50 | |
| Total.............. | | $732 88 | |

It was shown that the borough had committed to its single policeman, the duty of inspecting the poles, wires and conduits of the several companies and for this service paid him a salary of $20.00 per month, or about one-third the amount of the annual license fees levied to compensate it for the services performed in the "inspection and regulation" contemplated by the act. It was not alleged or proven by the borough that the inspection thus given was not fully up to any municipal requirement, that it was not adequately compensated in the amount paid the policeman, or that a proper inspection sufficient to enable the borough to discharge every duty it owed to its citizens in the premises could not have been had even for less money.

On the contrary, the testimony offered by the petitioner, which was uncontradicted, tended to prove that when a conduit has been laid underground, when the frosts of the winter and the thaws of the spring have once come and gone, and the overlying surface has been then adjusted to the new conditions, all surface indications marking even the location of the buried conduit will have practically disappeared and inspection of the line thereafter could at best be but little more than perfunctory. It would seem, therefore, that an annual charge of $30.00 per mile would go far beyond the compensation contemplated by the act.

As to the pole and wire structure the evidence would fairly lead to the conclusion that for a period of years after new construction there is but little to apprehend from the natural decay of the material. But such a structure is plainly subject to injury from external causes, high winds, heavy snows and the like and therefore might properly be inspected several times each year by a careful municipality. But both poles and wires may be inspected at the same time, and it is manifest from the testimony that no great amount of time need be spent in making an effective inspection of a pole line. The borough, too, has the benefit of the frequent inspections made by the companies themselves whose business cannot be transacted unless their lines are maintained in efficient working order. The borough is of course not required to accept these inspections as conclusive and may properly supplement them by its own. But the fact

that they are made by competent men and with the end of maintaining the lines in standard condition ought not to be lost sight of in a proceeding like the present.

We are not unmindful, on the one hand, that the object of inspection is the regulation that is to follow, and that reports must be made and so kept that their information is available for the use of councils; whilst, on the other hand, the courts have repeatedly declared that a municipality may not, under the guise of license fees, levy and collect revenue to be expended in the discharge of municipal obligations: Kittanning Boro. v. Telegraph Co., 26 Pa. Superior Ct. 346; Pottsville Boro. v. Pottsville Gas Co., 33 Pa. Superior Ct. 480.

Realizing the difficulty of arriving at the exact sum which a borough should properly undertake to collect, as license fees, from companies like the petitioner, the legislature has wisely provided that the question should be subject to a readjudication at the end of two years. Thus, accumulating experience will beget increased knowledge, serious disputes will more rarely arise and their adjustment will become more easy and accurate.

After endeavoring to give due weight to all of the evidence contained in the record and an attentive consideration to the aim and object of the statute, we have reached the conclusion that the decree, entered by the learned court below, should be so modified as to make the maximum sum which the borough shall be authorized to charge as license fees against the petitioner, $10.00 per mile for each mile of conduit; $1.50 per mile for each mile of wire, and fifty cents for each pole, and the record is remitted to the court below with direction to enter a decree in accordance with this order. The costs of this appeal to be paid by the respondent, the borough of Sharon Hill.