# Pittsburg & Allegheny Telephone Company v. Braddock Borough, Appellant.

*Constitutional law—Title of act—Trial by jury—Delegation of legislative power—Telephone and telegraph companies.*

1. The Act of April 17, 1905, P. L. 183, entitled, "An Act providing for the determination by the Court of Common Pleas of the proper county of all disputes as to the reasonableness of the amount of license fees between municipal corporations and telegraph, telephone or light or power companies," is not unconstitutional. It does not violate the provision of the constitution relating to the title of statutes; nor does it violate the provision of the constitution relating to the trial by jury; nor does it delegate legislative power to the courts.

*Municipalities—Trial by jury—Constitutional law.*

2. A municipality does not belong to the class whose rights to trial by jury are guaranteed by art. I, sec. 6, of the constitution of Pennsylvania.

*Telegraph and telephone companies—Practice, C. P.—Findings of fact.*

3. In a proceeding under the Act of April 17, 1905, P. L. 183, to determine the reasonableness of a license fee imposed by a municipality upon a telephone company, the findings of fact by the court have the same conclusive force and effect as the verdict of the jury, save only in cases of manifest and flagrant error on the part of the court.

*Telephone and telegraph companies—Res judicata—Reasonableness of ordinance.*

4. An adjudication by the court of common pleas of the reasonableness of a license fee imposed by a municipality upon a telephone company is not res judicata of a similar proceeding between the same parties several years thereafter. Conditions may have so changed in the meantime as to render an ordinance reasonable at the time of its passage unreasonable and oppressive at the time of the second proceeding.

Argued April 15, 1910. Appeal, No. 48, April T., 1910, by defendant, from judgment of C. P. No. 3, Allegheny Co., Nov. T., 1908, No. 407, to determine a dispute between the Pittsburg & Allegheny Telephone Company

and the Borough of Braddock.  Before RICE, P. J., HEN-
DERSON, MORRISON, HEAD, BEAVER and PORTER, JJ.
Affirmed.

Proceeding under the act of April 17, 1905, for the de-
termination of a dispute as to the reasonableness of li-
cense fees imposed by the borough of Braddock on the
Pittsburg & Allegheny Telephone Company.  Before KEN-
NEDY, P. J.

From the record it appeared that in 1894 the borough
of Braddock passed an ordinance imposing a license fee
of $1.00 on each telephone pole and $2.50 per mile for
suspended telephone wire.  This ordinance was declared
valid by the Supreme Court in 1903.  The present pro-
ceeding was to recover for license fees alleged to be due
for the years 1905, 1906, 1907 and 1908.

KENNEDY, P. J., found, inter alia, the following facts:

6. That the Pittsburg & Allegheny Telephone Com-
pany, the petitioner, has maintained during the years
1905 to 1908, both inclusive, 242 poles and seventy-one
miles of wire in the borough of Braddock.  The entire
length of its pole lines is five miles and a thorough in-
spection of its poles and wires can be made in one day,
but not by one man.

7. There are and have been during the years 1905 to
1908, inclusive, erected and maintained in said borough
by other companies than the petitioner, additional lines
of poles and wires.  The number of poles so erected, in-
cluding those of the petitioner, number 1,273.  The num-
ber of miles of wire erected by the several companies is
not definitely fixed by the testimony, but are approxi-
mately 200 or 300, the entire length of the pole lines
being about five miles and the license fees provided for
by the said ordinance would amount to about $2,000,
annually.

8. The inspection which is made by the borough is
made by the chief of police and the street commissioner,
who is also superintendent of public works and borough

engineer, at the end of each month, and is made in connection with other duties of said officers, requiring a considerable amount of time on their part to make the inspection and reports. The policemen, also, are instructed to look out for any defects in the poles and wires, and to report the same. This inspection of the poles and wires is a regular examination of the same, and is made monthly by the chief of police, who files a written report of the result of his inspection with council at its monthly meetings, in accordance with the provisions of the ordinance attached to the answer filed in this case and marked exhibit "C." The superintendent of public works, who is also street commissioner and borough engineer, also makes an inspection monthly of the same character of the condition of said poles and wires, a report of which is in writing and is filed with council at its monthly meeting; that these reports are considered monthly by council and the defective conditions, if any, as shown by said reports, are immediately referred to the company, the inspection covering the physical condition of the poles and wires, ascertaining whether the poles are sound or decayed and whether the wires are properly attached to the cross-arms and their proximity to other wires. In addition to these inspections, so reported, the entire police force of the borough, which numbers fourteen officers, are charged with the duty of constantly maintaining a supervision over and inspection of said poles and wires, both day and night; that these officers, in the discharge of their duty, report the condition, though not in writing, to the chief of police. In addition to this the chief of police and the superintendent of public works made an annual inspection, counting the number of poles and ascertaining the number of miles of wire, and this system of inspection has been in force for some time prior to 1905, to the present date, and is still in force.

9. The chief of police of said borough receives a salary of $3.10 a day; the police officers $2.70 a day, and the superintendent of public works a salary of $150 a month.

The cost of the maintenance of the police department of the borough annually exceeds the sum of $17,000, and the annual license fees charged to the petitioner, under the terms of the ordinance, is $419.50, which is applied to the maintenance of the police department.

10. A thorough and efficient monthly inspection of the said poles and wires in the said borough, made by the chief of police and superintendent of public works, together with the oversight of the same by the members of the police, would be sufficient to protect the public from any injury which might be occasioned by the construction and maintenance of the poles and wires in the public highways of said borough, but the same cannot be made by one person in one day's time, and the wages of competent persons for that purpose would exceed the sum of $2.70 per day.

11. The poles and wires belonging to the petitioner have, at all times, been maintained in good repair, and a thorough system of inspection and supervision is, at all times, maintained by the company petitioner.

12. That the inspection of all the poles and wires of all the companies in said borough cannot be made as readily and quickly as the poles and wires of any single one of the companies maintaining poles and wires in the highways of said borough.

13. That the moneys collected as license taxes in said borough are mingled with the general revenues and taxes of said borough, and no separate account of same has been kept and no separate account of the inspection and supervision of the poles and wires by the said borough has been kept by said borough, and the salaries of the police officers and the street commissioner are paid out of the general revenues of the borough. No addition was made to the salaries of the officers by reason of the inspection or supervision and regulation of the poles and wires of the company petitioner, although there is additional expense incurred by reason of such inspection, supervision and regulation.

14. The borough of Braddock has a length of about one mile and a width of upwards of one-half a mile, with a dense population aggregating upwards of 22,000 people, and is closely built up and is directly in the pathway of commerce east and west; the Pennsylvania railroad lines running north of the borough; the Baltimore & Ohio lines through almost the center of the borough its entire length, and the Pittsburg & Lake Erie Railroad on the south about parallel with the Baltimore & Ohio, and along the lines of these railroads are numerous poles and wires. The Western Union Telegraph Company also has a line of poles through the borough, upon which are numerous wires. The Central District and Printing Telegraph Company maintains a line heavily strung with a number of wires through the center of the town. The Pittsburg Railways Company and the Monongahela Light & Power Company also maintain lines of poles and wires along the main streets and over some of the side streets and alleys. The telephone companies and light companies have numerous service lines running from the main lines to private properties. Petitioner's lines cross and recross above and below all of these various lines, making a network of very many wires, and some highly charged; thus rendering a most careful, thorough and efficient inspection and supervision of the various lines of poles and wires on the part of the borough for the safety of the same and its citizens and the public.

15. Practically all of the streets and alleys of the borough of Braddock are paved and its territory almost entirely built up; that Braddock avenue, which is the main public highway of said borough, upon which are located all the banks and a majority of the stores and business houses, is crowded with poles and wires of other public corporations as well as those of the petitioner's lines, almost its entire length, and the necessity for the inspection of the poles and wires on that thoroughfare exceeds the requirements of other streets in the borough and renders necessary a high degree of care and the most thorough,

careful and efficient inspection and supervision of the lines of the petitioning company for the safety and protection of the borough, its citizens and the public.

The court found that the act of 1905 was constitutional; that the ordinance was unreasonable, and that fifty cents was a proper fee for each pole and fifty cents per mile for each single line of suspended open wire.

*Errors assigned* were the various findings and the judgment of the court.

*Jos. F. Mayhugh*, for appellant.—The Act of April 17, 1905, P. L. 183, is unconstitutional and void: Schellsburg v. Tel. Co., 26 Pa. Superior Ct. 343; North Penna. Coal Co. v. Snowden, 42 Pa. 488; Norris's App., 64 Pa. 275; Tillmes v. Marsh, 67 Pa. 507; Haines's App., 73 Pa. 169; Penna. Co. v. R. R. Co., 204 Pa. 356; Washington Boro. v. Tel. Co., 33 Pa. C. C. Rep. 161.

The ordinance was reasonable: City of Chicago v. Rumpff, 45 Ill. 90; Evison v. Chicago, etc., Ry. Co., 45 Minn. 370 (48 N. W. Repr. 6); Kip v. Paterson, 26 N. J. Law, 298; City of Hudson v. Thorne, 7 Paige (N. Y.), 261; Cronin v. People, 82 N. Y. 318; Chester City v. Tel. Co., 154 Pa. 464; Kittanning Boro. v. Western Union Tel. Co., 26 Pa. Superior Ct. 346.

The reasonableness of the ordinance is res adjudicata: Schwan v. Kelly, 173 Pa. 65; Hartman v. Incline Plane Co., 2 Pa. Superior Ct. 123; Amshel v. Hosenfeld, 20 Pa. Superior Ct. 373; Schriver v. Eckenrode, 87 Pa. 213; Newton v. Hook, 48 N. Y. 676; Haneman v. Pile, 161 Pa. 599.

*John S. Weller*, with him *Richard W. Martin*, for appellee.—Cited as to constitutionality of act: West Chester Boro. v. Tel. Co., 38 Pa. Superior Ct. 603; Penna. R. R. Co. v. Braddock Elec. Ry. Co., 152 Pa. 116; Dunmore Boro.'s App., 52 Pa. 374; O'Neil v. Fire Ins. Co., 166 Pa. 72; McGonnell's License, 209 Pa. 327; Foster

Twp. Road Tax, 32 Pa. Superior Ct. 51; Rockhill Iron & Coal Co. v. Fulton County, 204 Pa. 44.

Cited as to the reasonableness of the ordinance: Schellsburg v. W. U. Tel. Co., 26 Pa. Superior Ct. 343; Postal Telegraph Cable Co. v. Taylor, 192 U. S. 64 (24 Sup. Ct. Repr. 208); Atlantic & Pac. Tel. Co. v. Phila., 190 U. S. 160 (23 Sup. Ct. Repr. 817).

Cited as to res adjudicata: Duchess of Kingston's Case, 20 How. St. Tr. 538; Phila. v. Ry. Co., 142 Pa. 484; Cromwell v. County of Sac, 94 U. S. 351; Nesbit v. Riverside Independent Dist., 144 U. S. 610 (12 Sup. Ct. Repr. 746); Koekuk, etc., R. R. Co. v. Missouri, 152 U. S. 301 (14 Sup. Ct. Repr. 592); City of Davenport v. C. R. I. & P. R. R. Co., 38 Iowa, 633; Freeman v. Barnum, 131 Cal. 386 (63 Pac. Repr. 691); Arnold v. Hosiery Co., 63 Hun (N. Y.), 176.

OPINION BY HEAD, J., July 20, 1910:

The proceeding resulting in the decree appealed from was begun under the Act of April 17, 1905, P. L. 183. The borough of Braddock takes this appeal and complains in the first place that the said act of assembly is unconstitutional.    The act has been twice before this court for construction: Delaware &  Atlantic Telegraph & Telephone Company's License, 37 Pa. Superior Ct. 151; West Chester Borough v. Postal Telegraph Cable Co., 38 Pa. Superior Ct. 603.    In the last-mentioned case the constitutionality of the act was directly assailed, but this court held it to be a valid exercise of legislative power.    In the present case it is argued that the title of the act is defective in that it fails to give notice of the legislation to be found in the body of the act and thus offends against the constitutional provision on that subject.    This is not the ground on which the legislation was attacked in the case already decided.

The act is entitled, "An Act providing for the determination by the Court of Common Pleas of the proper county of all disputes as to the reasonableness of the amount of

license fees between municipal corporations and telegraph, telephone or light or power companies." To determine a dispute is to end it. When a court ends a dispute between parties it does so by the entry of an appropriate order, judgment or decree. The act of the court in such case, being an exercise of judicial power, the idea of a previous hearing of the parties and ascertainment of the facts, and of all the ordinary incidents of a legal trial, are sufficiently indicated in the language of the title of the act providing for the entry of such judgment or decree. We cannot think that anyone interested in the subject expressed in the title could be fairly surprised at any provision contained in the body of the act. It designates the court that is to enter the decree. It provides for appropriate pleadings to raise the necessary issue and mark the boundaries of the dispute, the existence of which caused the filing of the petition. The act describes, by apt and familiar expressions, the character of the procedure to be taken under it, and declares the force, effect and limitations of the judgment or decree to be entered. All of these matters are so strictly germane to the determination of the dispute mentioned in the title that no good purpose could be subserved by loading the title with specific references to all of them.

The decisions construing and applying the constitutional provision referred to have been so numerous and so recent that it would be but a useless parade of learning to cite or refer to them here. We deem it sufficient to say that we regard the title to the act as a sufficient compliance with the constitutional requirement on that subject.

Nor is it necessary to more than mention the argument advanced to prove that by the operation of this act the borough of Braddock has been denied the benefit of art. I, sec. 6, of the constitution which provides "trial by jury shall be as heretofore and the right thereto remain inviolate." In the Borough of Dunmore's Appeal, 52 Pa. 374, it was determined that a municipality does not belong to the class whose rights are guaranteed by the

section quoted. It was there clearly pointed out by Mr. Justice WOODWARD that as municipalities are but the creatures of legislative power, they must bow to the legislative will and be subject to its mandates, even in cases where natural persons, citizens of the commonwealth, might lawfully and constitutionally disregard such legislation.

It is further alleged that by this act the legislature has attempted to delegate legislative power to the courts. A study of the act clearly enough shows, we think, that the court, in entering the decree contemplated by the act, in no sense exercises legislative power. It merely ascertains and defines the boundary line which separates the reasonable from the unreasonable. The legislature, whose creature the appellant is, has declared that in the exercise of the police powers delegated to it, it must keep within that boundary line. With that limitation defined, the municipality, keeping within it, has the exclusive right as before to determine the exact amount of license fees which the corporations mentioned in the act must pay. The municipality is but an agency created by the legislature to do its part in maintaining the public policy of the state and accomplishing the ends for which the state itself exists. Public service corporations are like agencies. They spring from the same creator and are brought into existence for the same purposes as the municipality itself. The act under consideration is but the expression of the legislative will that these two agencies must live in harmony and but provides the methods by which that harmony, if threatened or disrupted, may be maintained or restored. On no one of the grounds urged can we declare the act of assembly invalid, and the assignments of error on this subject must be overruled.

A number of assignments attack the findings of fact of the court below. It must be apparent that in making up such findings in cases like the present, local conditions as described by the witnesses, as well as the opinions of qualified persons, would be factors of considerable importance. The presiding judge of the county wherein such a

proceeding is instituted has much important knowledge concerning men and conditions that appellate courts cannot and do not possess. Hence the wisdom of that policy which requires us to accept these findings as having the same conclusive force and effect as would the verdict of a jury, save only in cases of manifest and flagrant error on the part of the trial court. A careful examination of the findings in the present case and the testimony from which they are drawn reveals no such error on the part of the learned court below, and as a consequence the several assignments on this subject cannot be sustained.

Finally, it is argued that the decree should be set aside because the reasonableness of the ordinance of the appellant borough, out of which this litigation arises, is res adjudicata. This contention is based on the fact that after this ordinance had been passed; but prior to the act of 1905, the appellant borough brought an action against the predecessor of the appellee company to recover license fees for certain years which had become due under the provisions of that ordinance. The company filed an affidavit of defense setting up that the ordinance was unreasonable and oppressive, and therefore invalid. Judgment was entered against the company for want of a sufficient affidavit of defense, and on appeal that judgment was affirmed by this court: Braddock Borough v. Allegheny County Telephone Co., 25 Pa. Superior Ct. 544. It ought to be apparent that the reasonableness of an ordinance must depend upon many conditions which, in their nature, are shifting and subject to change. From this it would seem to follow that an ordinance might well be deemed to be reasonable, in the light of the conditions existing at the time of its adoption, and yet might become unreasonable and oppressive when those conditions had changed or disappeared. It would be illogical, therefore, to hold that because license fees had been collected during certain years past, that no citizen could thereafter be heard to complain that the provisions of the ordinance had become unreasonable.

It may be proper here to quote from the opinion of this court in the Delaware & Atlantic Telegraph & Telephone Company's case, 37 Pa. Superior Ct. 151: "The learned court below was not called upon, in this proceeding, to exercise the power possessed by the courts long before the passage of the act now under consideration, viz., to set aside an ordinance because it was unreasonable, oppressive and arbitrary, resulting from an abuse of the powers of the municipality. The object of this proceeding was simply to determine, from the evidence produced, 'the amount of annual license fees which should be paid to the said municipal corporation,'" etc. And the legislature in its wisdom has recognized the fact that in the very nature of things these determinations, whether made by the municipality in the first instance or by the court after a dispute has arisen, ought to be subject to change with changing conditions, because in sec. 5 it provides, "The amount of such annual license fees, as determined by the final order of the court, shall continue until altered by the court itself; but no application shall be made for that purpose oftener than once in every two years."

After an attentive consideration of all the arguments urged upon us in the careful brief of the learned counsel for the appellant we are all of the opinion that the record discloses no reversible error.

Decree affirmed.