# Nanticoke Borough, Appellant, *v.* Bell Telephone Company.

*Telegraph and telephone companies—License tax—Findings of fact by court—Act of April 17, 1905, P. L. 183.*

In a proceeding under the Act of April 17, 1905, P. L. 183, to determine the reasonableness of a license tax imposed by a municipality upon telegraph or telephone companies, the findings of fact of the court have the same conclusive force as the verdict of a jury, and the appellate court will not disturb them, except in cases of flagrant and manifest error.

Argued March 7, 1911. Appeal, No. 35, March T., 1911, by plaintiff, from judgment of C. P. Luzerne Co.,

Oct. T., 1909, No. 402, for defendant in case tried by the court under the Act of April 17, 1905, P. L. 183, in suit of Nanticoke Borough v. Bell Telephone Company of Pennsylvania. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Petition to determine amount of license fee.

FULLER, J., filed the following opinion:

This proceeding is founded upon the Act approved April 17, 1905, P. L. 183, and the case has been heard on petition, answer, replication and evidence "in the way and manner provided by law for the hearing of cases in equity."

### FACTS.

1. A dispute has arisen between the borough of Nanticoke, "a municipal corporation of this State and County, having authority under the law to charge a license fee against any telegraph, telephone, light or power company occupying the highways of said borough, with its poles, wires, conduits and cables," and the Bell Telephone Company of Pennsylvania, which thus occupies said highways, as to whether the amount of license fee, to wit, twenty-five cents for each pole and $1.00 for each mile of wire named in an ordinance of said borough adopted February 3, 1903, "for the inspection and regulation of the said poles, wires, conduits or cables under its police power, is or is not reasonable."

2. Wherefore the said borough applied by this petition to this court to determine the said dispute, and all proper steps have been taken by citation, service, answer, replication and hearing as provided and prescribed in the said act.

3. The answer denies the legal right of the borough to exact any license fee whatever from the respondent, but this denial (which if correct would oust our jurisdiction of this proceeding), was not urged upon the hearing, and the single issue submitted for our decision is the conten-

tion of respondent that no larger fee than ten cents for each pole and nothing for wires should be allowed, against the contention of petitioner that the fees fixed by the ordinance are reasonable.

4. The respondent's telephone line is of comparatively recent construction, all of it having been constructed within eight years and half of it within four or five years. The poles now number about 460 and the aggregate length of all the wires strung thereon amounts to about 120 miles, along perhaps fifteen miles of street.

The wires have the moderate size and weight common to telephone wires. The poles are chestnut, an approved wood in respect to durability. No evidence was adduced to show that any pole had ever fallen on account of storm, decay, or other cause, or that any wires had ever broken except in three instances during 1910, or that any damage of any description had ever been occasioned by the condition of poles and wires at any time.

Chestnut poles will continue sound, safe and serviceable for an average period of from fifteen to eighteen years. Their condition at any time may be most readily and expeditiously ascertained by a simple instrument called a prodding bar thrust into the base near the ground, the method commonly employed, by which one man may test the soundness of three or four hundred poles in a single day.

The wires have unlimited durability, except that an average of one break in a year in from ten to twenty-five miles of wire is liable to occur. On this line, in said borough, during eleven months of 1910 three breaks occurred as above noted, an average of only one in forty miles of wire.

The only feasible or required inspection of the wires is to glance at them as one walks along, to discover a possible break, involving no skill, no effort, and no expenditure of time beyond what is simultaneously used in the examination of poles.

The occurrence of any break in the wires or of any other

deranging accident along the telephone line is made immediately known at the central office of the company in the borough by a mechanical device which announces any obstruction of the electric current, and the commercial interest of the company demands prompt reparation of the trouble in order to avoid interruption of the service.

By this means, and on this account, notice of the trouble comes with a greater certainty and celerity than it could possibly come through any municipal instrumentality, and the self-interested motive for its speedy removal is quite as effective as any fear of municipal action.

The poles of this respondent are not used to carry the wires of any other company, telephone, trolley or electric light, but are exclusively used to carry its own wires, and the current of electricity conducted by them has too little strength to be of itself dangerous in the least degree.

The only possibility of damage to the public, arising from the existence of this telephone line on the streets of this borough, is that a broken wire of the line might come in contact with an electric light or trolley wire, which conducts a more powerful current, but this contingency is not likely to occur, was not shown to have ever occurred, and the owners of the wires are immensely interested to prevent its occurrence, or if it should occur, to abate the danger with all possible dispatch.

The need of any municipal inspection is in fact almost purely theoretical. Since the passage of the ordinance in question it would seem that this municipality did not consider any special inspection to be necessary until after the present dispute arose. Now a high constable receiving a salary of $57.50 per month, a chief of police receiving a salary of $65.00 per month, one sergeant of police receiving a salary of $60.00 per month, two patrolmen receiving each a salary of $57.50 per month, and one street commissioner receiving a salary of $60.00 per month, with an indefinite number of subordinate individuals, while engaged in the performance of other duties appertaining to their respective positions, bestow some measure of in-

definite incidental observation upon the condition of the respondent's line. It was not shown that the amount of salary paid or the number of officers employed was affected at all in any instance by the inclusion of this observation in the services to be performed. Nor has it been shown what the necessary cost of such service is, or that any actual cost is incurred thereby. Nor has it been shown that any cost of "regulation," as distinguished from inspection, has been incurred or is likely to be incurred.

A thorough inspection of this line within this borough can be made by one competent man receiving wages of $3.00 per day, in one or at most one and part of another working day of eight hours, and one or at most two such inspections in a year would be ample, with some additional allowance against the anticipation of disturbance occasioned by unusual storms of sleet or wind.

From all the testimony in the case, considering the absence of liability to have trouble, the interest and the opportunity of the respondent to quickly discover and correct the trouble, giving due weight to the exercise of discretion by the municipality itself to fix the fee, and allowing a most liberal margin for all reasonable contingencies, we state as our decisive conclusion of fact:

5. Not more than twelve inspections of respondent's line during the year within this borough are necessary, and the necessary cost thereof should not exceed $5.00 for each inspection, amounting in the aggregate to $60.00 per annum for inspection of a line embracing approximately 500 poles. Hence an annual license fee of twelve cents per pole, with no separate allowance for wires, will properly compensate the said borough for the necessary cost of the services performed or to be performed by it for the inspection and regulation of the poles and wires of said respondent.

CONCLUSIONS OF LAW.

1. The maximum amount of annual license fee which

should be charged by the borough of Nanticoke against the Bell Telephone Company of Pennsylvania is twelve cents per pole, without separate fee for wires.

2. The ordinance fixing a fee of twenty-five cents per pole and $1.00 per mile of wire, is unreasonable, being one for revenue only and not for legitimate protection of the borough against the cost of inspection and regulation aforesaid.

*Error assigned* was the judgment of the court.

*Thomas Butkiewicz, Jr.,* for appellant, cited: Lower Merion Twp. v. Postal Telegraph Co., 25 Pa. Superior Ct. 306; Delaware & Atlantic Telegraph & Telephone Co.'s License Fees, 37 Pa. Superior Ct. 151; Pitts. & Allegheny Tel. Co. v. Braddock Boro., 43 Pa. Superior Ct. 456; Schellsburg v. W. U. Tel. Co., 26 Pa. Superior Ct. 343.

*Evan C. Jones,* with him *Thomas H. Atherton,* for appellee.—Counsel for appellant argues that the fee in the case at bar, as determined by the court, is unusually low. Such is not the case. The majority of decisions by the various county courts in proceedings like this have fixed the pole tax at ten cents per pole without a separate tax upon wires.

In United Telephone & Telegraph Company's Petition, 15 Pa. Dist. Rep. 193, Judge SADLER fixed the license fee at ten cents per pole.

The same license fee, to wit, ten cents per pole, has been established by judicial decisions in the following cases, together with many others not reported: Postal Telegraph-Cable Company's Petition, 17 Pa. Dist. Rep. 1085, in the court of common pleas of Lancaster county; Postal Telegraph-Cable Company v. City of Lancaster, Trust Book, No. 21, p. 231, in the court of common pleas of Lancaster county; Pennsylvania Telephone Company v. South Bethlehem Boro., 16 Pa. Dist. Rep. 878, in the

court of common pleas of Northampton county; Curwensville Borough v. Huntingdon & Clearfield Telephone Company, 16 Pa. Dist. Rep. 602, in the court of common pleas of Clearfield county; Postal Telegraph-Cable Company v. West Conshohocken, 24 Montg. County Law Reporter, 118, in the court of common pleas of Montgomery county.

In Punxsutawney Boro. v. Western Union Telegraph Company, 18 Pa. Dist. Rep. 308, Judge REED fixed the fee, in the common pleas of Jefferson county at fifteen cents per pole.

In Consolidated Telephone Companies of Pennsylvania v. City of Easton, 16 Pa. Dist. Rep. 887, Judge STEWART fixed the pole tax at ten cents.

The following decisions fixing the license fee for poles at ten cents have been rendered by the respective courts below named, but none of them, so far as a careful search of the books reveals, are yet reported: Pennsylvania Telephone Company v. Borough of Gettysburg, in the court of common pleas of Adams county, opinion filed May 13, 1907; Borough of Gettysburg v. United Telephone Company, in the court of common pleas of Adams county, No. 87, November Term, 1910, opinion by Judge SWOPE; Borough of Newtown v. Newtown Street Railway Company, in the court of common pleas of Bucks county, opinion by Judge STOUT; Huntingdon & Clearfield Telephone Company v. Borough of South Phillipsburg, in the court of common pleas of Centre county, No. 111, April Term, 1906, opinion by Judge TELFORD; City of Erie v. Erie County Electric Company, in the court of common pleas of Erie county, No. 118, February Term, 1907, opinion per curiam; United Telephone & Telegraph Company v. City of Lebanon, in the court of common pleas of Lebanon county, No. 35, September Term, 1906, opinion by Judge EHRGOOD; Pennsylvania Telephone Company v. City of Lebanon, in the court of common pleas of Lebanon county, No. 158, September Term, 1906, opinion by Judge EHRGOOD; Borough of Port Clinton v. Postal Telegraph-

Cable Company, in the court of common pleas of Schuylkill county, No. 229, September Term, 1906, opinion by Judge MARR; Western Union Telegraph Company v. Borough of Stoyestown, in the court of common pleas of Somerset county, opinion by Judge KOOSER.

OPINION BY HEAD, J., July 13, 1911:

This was a proceeding under the Act of April 17, 1905, P. L. 183. As the statute expressly provides that such proceedings shall be heard and decided "in the way and manner provided by law for the hearing of cases in equity," it would necessarily follow, as we held in P. & A. Tel. Co. v. Braddock, 43 Pa. Superior Ct. 456, that we must accept the findings of fact adopted by the learned judge who heard the cause "as having the same conclusive force and effect as would the verdict of a jury." We cannot disturb or interfere with them except in cases of flagrant and manifest error.

Practically all of the assignments of error which have been urged upon us complain of the findings of fact. A careful examination of the testimony has satisfied us that the court found no fact without testimony to support it, and we are therefore unable to sustain any of the assignments alleging error in such findings.

The statute declares that the matter to be determined by the court in such a proceeding is "the amount of annual license fees which should be paid to the said municipal corporation in order to properly compensate it for the necessary cost of the services performed or to be performed by it for the inspection and regulation of poles, wires, etc." As these proceedings are akin to those in equity, not only in form but in substance, it would follow that each of such cases must be determined according as the evidence in that case portrays the conditions that confront the municipality. The statute, too, contemplates that such conditions will change, and hence provides that either party, at any time after two years from a given adjudication, may begin a new proceeding for the purposes

of securing some modification of the decree previously entered. There was ample evidence in the present case to warrant the court in finding that the plant of the defendant company was compact, comparatively new, and that it could be thoroughly inspected by a competent man skilled in that business in about nine hours'· time, and at a cost of about $3.00. There was evidence from competent experts that such an inspection made once in each year would be sufficient to keep the municipality advised as to the general condition of the system and the effect of ordinary wear and tear upon it. It was also pointed out that the company itself was vitally interested in maintaining its poles and wires in a perfect state of repair, and was fully provided with appliances to at once detect any incidental injury to either. This of course did not of itself relieve the municipality from its duty nor deprive it of its right to reasonably see for itself that neither poles nor wires became at any time a menace to the safety of the public in the use of the streets of the borough. Nor did the learned judge below, in his decree fixing the amount of the license fee, restrict the borough to such single inspection. He allowed them a sum which, measured by the number of poles in the borough at the time the decree was made, would compensate the borough for the expense incurred in making such complete and thorough inspection a half dozen times in each year, besides a fair margin for the cost of issuing the permit, tabulating reports, etc. In a word, we think the opinion filed by the learned judge fully vindicates the decree which he has entered and clearly shows that the appellant has no just ground of complaint.

The only assignment of error which may be said to raise a question of law is the first which complains of the action of the court sustaining an objection to the offer of the borough to show the total number of poles not only of the defendant but of all other companies, strangers to the present proceeding, which were maintained within the limits of the municipality. This assignment is in no

way pressed upon us in the brief of argument filed by the able counsel for the appellant, and we think the propriety of the action of the court in thus refusing to obscure the single issue raised by the pleadings is manifest.

Decree affirmed.