Opinion by
Porter, J.,
The plaintiff borough, in the exercise of the police power, enacted an ordinance imposing a license tax of $1.00 per year, upon each pole maintained by any electric light, telephone, telegraph or street car company, used for the purpose of suspending wires of such companies in the streets of the borough. The defendant company was at the time maintaining in the streets of the borough 348 poles supporting the wires used in the conduct of its business, and refused to pay the license fee imposed by the ordinance. The borough thereupon presented to the court its petition, under the Act of April 17, 1905, P. L. 183, stating that a dispute had arisen as to the amount of license fee to be paid by the defendant to the municipality, for the inspection and regulation of its poles, wires and conduits under the police power of the borough, and praying the court to determine said dispute, as by the statute required. A citation having issued, the defendant filed an answer, testimony was taken and the matter proceeded to a final hearing. The court entered a decree fixing the amount which the borough should be permitted to charge to compensate it for the service performed and to be performed in the inspection and regulation of the poles and wires of the defendant company at fifty cents per pole, or $174 per year, and from that decree the defendant appeals.
Many of the specifications of error complain of the findings of fact by the court below. “The presiding judge of the county wherein such a proceeding is instituted has much and important knowledge concerning men and conditions that appellate courts cannot and do not possess. Hence the wisdom of that policy which requires us to accept these findings as having the same conclusive force and effect as would a verdict of a jury, save only in cases of manifest and flagrant error on the part of the trial court.” Pittsburg & Allegheny Telephone Co. v. Braddock Borough, 43 Pa. Superior Ct. 456; Nanticoke Borough v. Bell Telephone Co., 47 Pa. Superior Ct. 184. *455 We have carefully examined the findings in the present case and the testimony upon which they are founded and find no such error on the part of the learned court below as would warrant us in disregarding any one of those findings, and as a consequence the several assignments of error on this subject cannot be sustained.
Each case of this character must be determined upon its own peculiar facts, as disclosed by the evidence, and it is proper that the court should, in ascertaining the cost of the proper inspection and supervision of any fine, consider all the circumstances involved. When the poles and wires of a public service corporation are maintained upon streets which are subject to frequent overflow, at the time of floods in a river, and the soil is of such a character that the poles and wires are thus made insecure, it is not only reasonable but necessary that the inspection should be frequent and careful. When the testimony discloses that many of the streets of the town are located upon hillsides and are subject to landslides which render the lines insecure, the safety of all persons using the streets requires that the lines should be very carefully looked after. When some of the streets are crowded with the wires of street car lines and electric light and power companies and above or intermingled with these are the wires of telegraph and telephone companies, common prudence suggests that the poles should be frequently inspected and that there should be constant and continuous general supervision of the wires, in order to avoid injury to persons and property. The borough may perform the duty of inspection, supervision and regulation, which it owes to all persons using its streets, through its ordinary police force, who are employed to preserve the peace and guard citizens against the dangers incidental to living in a municipality, and it may require those employed to look after the general condition of the streets to inspect these poles and wires therein maintained, in connection with their other duties. That it is not necessary that a city or a borough must maintain a separate and distinct organization for *456 the purpose of inspecting, regulating and supervising these lines, in order to sustain a charge, imposed under the-police power, to reimburse it for the expenditure involved, has been decided in many cases, of which it is sufficient to cite Pittsburg & Allegheny Telephone Co. v. Braddock Borough, 43 Pa. Super. Ct. 456, and New York & Pennsylvania Telephone & Telegraph Co. v. Coudersport Borough, 49 Pa. Superior Ct. 46.
The tenth specification alleges that the court erred in its opinion, to wit: “The presumption is that the license fee of the borough is reasonable and that, the borough acted in good faith when it passed said ordinance fixing the annual license fee per pole at 11.00. The burden is on the telephone company to remove this presumption of reasonableness.” This specification might be well founded, if the court had disposed of the case on any such theory. The court used this language in stating the effect of the decisions prior to the act of 1905, but the court distinctly recognized the change produced by the act of 1905, and said: “Under the act of assembly, by virtue of which the petition in this case was filed, the power of the court is enlarged. The court has the power and duty of fixing the fee which shall be paid by the company to the borough to properly compensate it in the exercise of its police power for the inspection and regulation of the poles, wires, conduits and cables of the company. The object of this proceeding then is to determine from the evidence the amount of license fee that should be paid by the company to the petitioner for the necessary cost of the services performed or to be performed by it for the inspection and regulation of the poles, wires, conduits and cables of said company.” And again: “Although ordinances fixing an annual tax of 11.00 per pole were held not to be unreasonable prior to the act of 1905, these cases must be disregarded in determining the amount of the license fee, which would reasonably compensate the borough of Monessen for services already performed or to be performed.” ' And, in conclusion, “We come now to *457 the determination of fhe question of what inspection and regulation the borough authorities of Monessen actually did make for the years 1910 and 1911, the necessity for this inspection and regulation so as to determine wh.at would be a reasonable license fee to be fixed by the court.” It thus appears that the court, in disposing of the question gave full effect to the provisions of the act of April 17, 1905, P. L. 183, a,s that statute has been construed ip. the cases which will be found cited in New York & Pennsylvania Telephone & Telegraph Co. v. Coudersport Borough, 49 Pa. Super. Ct. 46. The court below in determining the amount of the license fee which the defendant might be required to pay absolutely disregarded the ordinance, and fixed the fee at one-half the amount which the borough had ordained.
The evidence disclosed that each member of the police force of the borough, which in the aggregate cost the borough $4,020 per annum, was instructed and required while on duty to make constant visual inspection of the poles and wires when on their beats, and to make report, daily of the condition of the same, which report was to be in writing when anything was found wrong, The borough engineer and street commissioner, also devoted a portion of their time to the inspection and regulation of the poles and wires in the streets. The defendant company contended, calling their employees to testify in support of that contention, that the only inspection which was reasonably necessary was a general inspection twice a year which could be done at a reasonable cost. The testimony of those witnesses also clearly indicated that that was practically all the supervision of the condition of its lines which this company exercised. We are not convinced that' two inspections a. year, without constant general supervision of the lines in the interim, is all that can be reasonably required, in such a case, to protect against injury those using the public streets. If a telephone wire which had fallen across another wire bearing a deadly current were permitted to dangle in the street *458 for a month, and some person lawfully upon the street then suffered injury, there might seem to be ground for holding that the question whether the company maintaining the wire and the borough authorities had been guilty of negligence was one which ought to be submitted to a jury. It may be that there is no necessity for a detailed inspection of the line, for which the services of an expert would be required, more frequently than twice in a year; but visual inspection, for dangers which would be evident to the ordinary man might, with some show of reason, be more frequently required. The very able argument submitted by counsel for the appellant has failed to convince us that the decree entered by the court below involved an abuse of the discretion with which it was invested.
The decree is affirmed, and the appeal dismissed at cost of the appellant.