# Bell Telephone Company *v.* Hazleton, Appellant.

*Telegraph and telephone companies—License tax—Amount of tax—Findings of fact—Act of April 17, 1905, P. L. 183.*

In a proceeding under the Act of April 17, 1905, P. L. 183, to determine the reasonableness of a license tax imposed by a municipality upon telegraph or telephone companies, the rule is established that the cost of the services performed, or to be performed by a municipality in the inspection and regulation of the poles, wires, conduits or cables belonging to such companies, should be the measure of the annual license fees imposed upon such structures maintained within the municipal limits.

In such cases the findings of fact of the court below has the same conclusive force and effect as would a verdict of a jury, save only in cases of manifest and flagrant error on the part of the trial court.

A license fee of twelve cents for each pole will be sustained where the court below finds in substance that the lines of the company were constructed of the best materials and carefully maintained; that they were regularly inspected by the company, and that the company had installed a device which gave immediate

notice of any defect in the lines; that there was nothing to show that owing to the character of the soil, or the condition of the street the poles and wires of the company were insecure and required unusually careful inspection; and that the city did not maintain a distinct organization to exercise the duty of inspection of the poles and wires, but that these duties were performed through its ordinary police force, street commissioner and engineer.

Argued March 8, 1917. Appeal, No. 60, March T., 1917, by defendant, from judgment of C. P. Luzerne Co., June T., 1912, No. 91, for plaintiff in case tried by the court under the Act of April 17, 1905, P. L. 183, in case of Bell Telephone Company of Pennsylvania v. City of Hazleton. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Petition to determine amount of license fee.

FULLER, J., filed the following opinion:

The questions at issue are:

(1) Whether the annual license fee of forty-four cents imposed by the City of Hazleton, defendant, upon each of the poles of the Bell Telephone Company of Pennsylvania, plaintiff, in that city, is reasonable or unreasonable, and if unreasonable (2) what license fee would be reasonable.

We find the following facts:

1. The City of Hazleton, one of the third class, defendant, is "a municipal corporation of this State, having authority under the law to charge a license fee against any telegraph, telephone or light or power company occupying the highways of said municipality with its poles, etc."

2. On March 1, 1895, said city adopted an ordinance providing, "That all telegraph, telephone, electric light, electric power, heating, or other company, street car companies and all other persons, companies and corporations owning, erecting, maintaining, using or permitting to stand upon the highways of the City of Hazleton, any pole or poles, shall pay to said city a license tax of

one dollar for each pole so owned, erected, maintained, used or permitted to stand upon such highway."

3. This court, however, in the case of said city v. the Hazleton Electric Light and Power Company, No. 411, February Term, 1907, by decree nisi, November 15, 1909, made final September 12, 1910, held that a license fee of one dollar per pole of that company was unreasonable and excessive, and that "an annual license fee of forty-four cents per pole should be paid to the said city by said Hazleton Electric Light and Power Company, in order to properly compensate the city for the necessary cost of the services performed or to be performed by it for the inspection and regulation of the poles, wires, conduits or cables of said company."

4. The Bell Telephone Company of Pennsylvania, plaintiff, is a corporation occupying the highways of said city with its poles, wires, conduits, or cables, to wit: In 1906, 267 poles; in 1907, 282 poles; in 1908, 292 poles; in 1909, 527 poles; in 1910, 667 poles; in 1911, 689 poles; in 1912 and 1913, 694 poles; in 1914, 726 poles; in 1915 and 1916, 739 poles.

5. Prior to said decision and afterwards, the said city, for the years 1906 to 1911, inclusive, imposed upon the Bell Telephone Company of Pennsylvania, plaintiff, an annual license fee of forty-four cents per pole aforesaid, the payment of which has been refused on the ground that "forty-four cents per pole is an excessive and unreasonable charge, not based upon the actual expense of inspection but at a rate intended to produce a revenue to said city."

6. Thus a dispute has arisen between the company plaintiff and the city defendant, whether said license fee of forty-four cents per pole thus imposed by the city for inspection and regulation under its police power is reasonable; and the present proceeding has been duly instituted and heard to determine this dispute.

7. The former decree of this court was rendered in a case involving a different company, whose wires carried

heavier and more dangerous currents of electricity, and on evidence differing substantially from that adduced in the case at bar. Consequently it cannot be held in fact any more than in law, to have any controlling effect upon our present conclusions.

8. The plaintiff's poles are chestnut, an approved wood in respect to durability, with an average period of safe and sound service of at least fifteen years; the wires are copper of unlimited durability; the cross-arms are preserved against decay by creosote; and all the devices are of the most approved type.

The best, the customary, and the only practicable mode of inspection is by prodding the pole with a sharp iron at the ground line, and by simple physical observation from the ground, of wires, cross-arms and other matters, which observation requires no expenditure of time beyond what is simultaneously used in the examination of poles.

One competent man working eight hours per day, on a wage of forty cents per hour, can readily and thoroughly inspect the entire line of the plaintiff, say 800 poles, in four days, and one such inspection every two months would be an extremely liberal allowance for all the reasonable requirements.

Conceding the desirability of continuous inspection through the year in preference to interrupted inspection at separate intervals of time, one man working forty-five minutes each day, at forty cents per hour, could inspect an entire line of say 800 poles at least six times a year at a cost not exceeding $100.

In fact, the plaintiff does maintain constant oversight on its own account. The occurrence of any break in the wires or of any other deranging accident along the line, is made immediately known at its central office by a mechanical device which announces any obstruction of the electric current, and the commercial interest of the company demands prompt reparation of the trouble in order to avoid interruption of the service. By this means and

on this account, notice of the trouble comes with greater certainty and celerity than it could possibly come through any municipal instrumentality, and the self-interested motive for its speedy removal is quite as effective as any fear of municipal action.

In fact, inspection costs the city nothing, because this work can be and is performed by the regular policemen in the course of their regular duties, by incidental observation.

It was not shown that the amount of salary paid or the number of officers employed was affected by the inclusion of this observation in the services to be performed, nor has it been shown what the necessary cost of such service is, or that any actual cost is incurred thereby; but it would be fair to allow for such proportion of their time as these policemen bestow upon such observation, and a most liberal estimate of that time and of the compensation applicable thereto would not exceed one hundred ($100) dollars per annum for 800 poles.

These conclusions are sustained by a great weight of testimony, and virtually are contradicted by only one witness, namely, the city engineer, who says that two men the year round on a policeman's compensation, $67.50, per month, would be required to inspect all of the 3,300 poles in the city belonging to the plaintiff and other companies, a total expenditure of $1,620 per annum, about fifty cents per pole, which according to his judgment would be the fair and reasonable cost of necessary inspection.

We are unable to sustain such an estimate in light of the facts.

This case cannot be distinguished in any essential fact, inference, or element, from the case of Nanticoke v. Bell Telephone Company, 47 Pa. Superior Ct. 184, in which we fixed twelve cents per pole.

9. From all the testimony in the case, it is found as a fact that an annual license fee of twelve cents per pole will properly compensate the said city for the necessary

cost of the services performed or to be performed by it for the inspection and regulation of the poles and wires of said company.

Hence we state as our conclusions of law:

1. "In every case the cost of inspection must be the measure of liability" (Del. & Atl. Tel. Co.'s Petition, 224 Pa., at page 66). .

2. The maximum amount of annual license fee which should be charged by the City of Hazleton against the Bell Telephone Company of Pennsylvania, is twelve cents per pole.

3. The ordinance fixing a fee of one dollar per pole and the imposition thereunder of forty-four cents per pole, are unreasonable, being for revenue only and not for legitimate protection against the cost of inspection and regulation aforesaid.

Accordingly the prothonotary is directed to enter and give notice of the following decree nisi:

Now, December —, 1916, this cause came on to be heard at this term on petition, answer and testimony, and having been argued by counsel, upon consideration thereof by the court, it is ordered, adjudged and decreed that the license fee of one dollar per pole fixed by the said ordinance, and for forty-four cents per pole imposed thereunder by the City of Hazleton, are unreasonable and excessive, and that the proper license fee under the law and the facts is twelve cents per pole.

*Error assigned* was the judgment of the court.

*John H. Bigelow,* for appellant, cited: City of Allentown v. Western Union Co., 148 Pa. 117; Monessen Boro. v. Central D. T. Co., 51 Pa. Superior Ct. 452; D. & A. T. & T. Co. License Fees, 37 Pa. Superior Ct. 151; Dormont Boro. v. Liberty Street Ry. Co., 64 Pa. Superior Ct. 562; McKeesport v. McKeesport, Etc., Ry. Co., 2 Pa. Superior Ct. 242; Mooney v. Luzerne Boro., 186 Pa. 161.

*Benj. R. Jones,* with him *Paul Bedford,* for appellee: cited Nanticoke Borough v. Bell Tel. Co., 47 Pa. Superior Ct. 184.

OPINION BY PORTER, J., July 13, 1917:

The plaintiff company presented a petition to the court below praying the court to "determine the amount of annual license fees which should be paid to the City of Hazleton in order to properly compensate it for the necessary cost of the services performed, or to be performed, by it, for the inspection and regulation of the poles and wires" of the petitioner, under the provisions of the Act of April 17, 1905, P. L. 183. The city filed an answer to this petition and upon the hearing of the issue thus raised evidence was taken and the court, after consideration, entered a decree fixing the amount which the city should be permitted to charge as a license fee at twelve cents per pole. The city appeals from that decree.

The legislature, by the statute in question, established the rule, to guide the courts in determining disputes of this character, that the cost of the services performed, or to be performed, by a municipality in the inspection and regulation of the poles, wires, conduits or cables belonging to the public service corporations to which it referred, should be the measure of the annual license fees imposed upon such structures maintained within the municipal limits. The cost of the service is the controlling factor in determining disputes between the parties. This must be accepted as settled by the decision of the Supreme Court in Delaware & Atlantic Telegraph & Telephone Co.'s Petition, 224 Pa. 55, which decision has been uniformly followed by the decisions of this court, of which it is sufficient to cite Nanticoke Borough v. Bell Telephone Co., 47 Pa. Superior Ct. 184; New York, Etc., Telephone & Telegraph Co. v. Coudersport Borough, 49 Pa. Superior Ct. 46; Monessen Borough v. Central District Telegraph Co., 51 Pa. Superior Ct. 452; Dormont Borough v. West Liberty Street Railway Co., 64 Pa. Su-

perior Ct. 562.   Reasonable latitude must be allowed
municipalities in dealing with this subject, but on the
other hand they should not be presumed to make useless
and unnecessary inspections at the cost of the operating
company.  Each case must be determined upon its own
peculiar facts, as disclosed by the evidence.  The presid-
ing judge of the county wherein such a proceeding is
instituted has much and important knowledge concern-
ing men and conditions that appellate courts cannot and
do not possess.  Hence the wisdom of that policy which
requires us to accept his findings of fact as having the
same conclusive force and effect as would a verdict of a
jury, save only in cases of manifest and flagrant error
on the part of the trial court: Pittsburgh & Allegheny
Telegraph & Telephone Co. v. Braddock Borough, 43 Pa.
Superior Ct. 456.   In the present case many of the as-
signments of error relate to findings of fact by the
learned judge of the court below.   A careful exami-
nation of the testimony has satisfied us that the court
found no fact without testimony to support it, and we
are, therefore, unable to sustain any of the assignments
alleging error in such findings.

The court found, in substance, that the lines of the
plaintiff company were constructed of the best materials
and were carefully maintained; that they were regularly
inspected by the company, and that the company had in-
stalled a device which gave immediate notice of any de-
fect in the lines.   There seems to have been no neglect of
duty upon the part of the company.   There was no evi-
dence which would have warranted a finding that, owing
to the character of the soil or the condition of the streets,
the poles and wires of the company were insecure and
required unusually careful inspection.   The city did not
maintain a distinct organization to exercise the duty of
inspection, supervision and regulation of the poles and
wires within its limits.   These duties were performed
through its ordinary police force, street commissioner
and engineer.   A municipality may, it is true, impose a

license fee for the cost of services performed by its police force, or other officers, in inspecting, supervising and regulating the appliances of public service companies installed in its streets, in connection with their other duties.  It was for the services of such officers, in exercising general supervision of the lines of the plaintiff company, that the court below found that the city should be permitted to charge a license fee of twelve cents for each pole of the plaintiff company.  The evidence indicated that the services which the city had performed, or which it had given any indication of an intention to perform, would not involve the expenditure of any considerable sum of money.  The evidence, taken as a whole, was strikingly similar to that which was considered in the case of Nanticoke Borough v. Bell Telephone Co., supra, in which a license fee at the same rate fixed in the present case was sustained.  We are not convinced that the decree of the court below was erroneous.

The decree is affirmed and it is ordered that the appellant pay the costs.

ORLADY, P. J., and HENDERSON and KEPHART, JJ., dissent.